# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SONY INTERACTIVE ENTERTAINMENT LLC,
   Plaintiff,

                v.

A1SQ0GU2H9VG4I, *et al.*,
   Defendants.

Civil Action No.
1:25-cv-05283-SDG

## TEMPORARY RESTRAINING ORDER

This case is before the Court on Plaintiff Sony Interactive Entertainment LLC′s motion for an *ex parte* temporary restraining order and additional injunctive relief [ECF 2] pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1114, § 1116, and § 1125(a). As discussed below, Plaintiff has satisfied the requirements for the issuance of an *ex parte* temporary restraining order and the additional relief requested as to its Lanham Act claims only.[1]

## I.    LEGAL STANDARDS

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) the threatened injury to the plaintiff outweighs the harm

---

[1]    Plaintiff also requests emergency injunctive relief for alleged copyright violations. ECF 2-2, at 19–23. However, Plaintiff has failed to show that the requested relief is appropriate under the Copyright Act. Its request is thus denied as to its Copyright Act claims.

the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, No. 1:18-cv-141-WSD, 2018 WL 566510, at *4 (N.D. Ga. Jan. 26, 2018) (applying four-part test and granting preliminary injunction in a Lanham Act case).

Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit demonstrate the moving party will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing the reasons why notice should not be required. FED. R. CIV. P. 65(b)(1). Where a defendant's identity is known and notice can be feasibly given, the court may still grant an *ex parte* seizure order if providing notice to the defendant would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249–50 (S.D. Fla. 1982) (citing numerous cases). The justification for an *ex parte* seizure order is even more compelling where a significant amount of evidence pertaining to the

counterfeiting activity is in electronic form, and therefore subject to quick, easy, and untraceable destruction by Defendants. *Dell Inc. v. BelgiumDomains, LLC*, No. Civ. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007); *see also Chanel, Inc. v. Chanel255.ORG*, Case No. 12-21762-CIV-ALTONAGA, 2012 WL 12845630, at *5 (S.D. Fla. May 17, 2012).

A request for permanent injunctive relief and disgorgement of the defendant's profits from counterfeiting pursuant to 15 U.S.C. § 1117, as well as a request for an award of attorney's fees, are requests for relief in equity. Requests for equitable relief invoke the court's inherent equitable powers to order preliminary injunctive relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court, having reviewed the Plaintiff's Motion for a Temporary Restraining Order (TRO), Memorandum, and supporting declarations and evidence, makes the following findings of facts and conclusions of law:

A.    **Plaintiff's Trademarks**

1)    Plaintiff owns and/or licenses numerous federal trademark registrations for the PlayStation® trademarks (collectively, the "PLAYSTATION Trademarks") including the following:

| Registration No(s). | Trademark |
| --- | --- |
| 5929333; 6776909 | PLAYSTATION |
| 6763918 | PS4 |
| 6496058 | PS5 |
| 3147147; 3003228 | PSP |
| 5000799 | PSVR |
| 6770411 | PLAY HAS NO LIMITS |
| 6451015 | PLAY LIKE NEVER BEFORE |
| 6367785 | DUALSENSE |
| 4498083; 6010231 | DUALSHOCK |
| 2431970 | DUAL SHOCK |
| 2730542; 4430716; 3029637; 2087964; 2259732; 2053625 | PlayStation |
| 6784229 |  |
| 3102506 |  |
| 4017554 |  |
| 7171803; 5619630 |  |
| 6770227; 6279642 |  |

| Registration No(s). | Trademark |
|---|---|
| 3025454 |  |
| 4741506; 5635158 |  |
| 3029955; 3128286 |  |
| 3036993; 2728079; 3029636; 3482765; 7279163 |  |
| 2024707; 2109353; |  |
| 6044484; 5667771 |  |
| 6770229; 6082275; 2754313; 2993560 |  |

| Registration No(s). | Trademark |
|---|---|
| 6805555; 2757385 |  |
| 5748316 |  |
| 6770203 |  |
| 3554534 |  |
| 4642869 |  |
| 3064169 | GOD OF WAR |
| 4735481 | UNCHARTED |
| 3052719; 3468429 | GRAN TURISMO |
| 5392159; 4800895; 4810333; 4403964 | THE LAST OF US |

| Registration No(s). | Trademark |
|---|---|
| 6895984 | ASTRO'S PLAYROOM |
| 5892540 | BLOOD & TRUTH |
| 4791550 | BLOODBORNE |
| 5829242 | DAYS GONE |
| 5829242 | DAYS GONE |
| 6002881 | DEATH STRANDING |
| 6383009 | DEMON'S SOULS |
| 6428579 | GHOST OF TSUSHIMA |
| 4756623 | HELLDIVERS |
| 5396802; 6448762 | HORIZON ZERO DAWN |
| 4183157 | INFAMOUS |
| 3102840 | INSOMNIAC |
| 2158179; 5618719 | INSOMNIAC GAMES |
| 4285981 | JAK AND DAXTER |
| 4172195 | JOURNEY |
| 3259104 | KILLZONE |
| 3946611 | LITTLEBIGPLANET |
| 2036776 | NAUGHTY DOG |
| 4841517 | RATCHET & CLANK |
| 3915492 | SACKBOY |
| 3679767 | SECRET AGENT CLANK |
| 3145954 | SLY COOPER |
| 3149183 | TWISTED METAL |
| 5927189 | BLOOD &TRUTH |
| 2404325 | NAUGHTY DOG |
| 6329559 | SAN DIEGO STUDIO |

| Registration No(s). | Trademark |
|---|---|
| 4254118 | SAN DIEGO <br> STUDIO |
| 4993920 | Santa Monica Studio |
| 4856474 | Santa Monica Studio |
| 3509850 | GT |

**B.    Defendants' Advertising and Sale of Counterfeit and Infringing Goods.**

2)      Each Defendant is believed to be a non-U.S. entity, association, or individual, located in China or elsewhere in Asia, each of whom sells, offers for sale, distributes, or advertises goods through e-commerce stores operating under seller aliases (the "Seller Aliases") on various e-commerce marketplaces, such as eBay, Inc.; AliExpress, Alibaba Group Holding Ltd., and Alibaba.com Singapore E-Commerce Private Limited (collectively "Alibaba"); Amazon.com, Inc.; Wish US

Holdings LLC ("Wish.com"); Walmart, Inc.; Etsy, Inc.; WhaleCo Inc. ("Temu");
ByteDance Ltd., TikTok Ltd., TikTok Inc., and TikTok LLC (collectively "TikTok");
and DHgate.com (each a "Marketplace" and collectively the "Marketplaces").

3)    Each Defendant uses in commerce a reproduction, counterfeit, copy,
or colorable imitation of one or more of the PLAYSTATION Trademarks on or in
connection with the sale, offer for sale, distribution, or advertising of goods on
their respective Seller Aliases on the Marketplaces ("Counterfeit Products").

4)    Each Defendant has offered Counterfeit Products for sale throughout
the United States. Each Defendant is willing to engage in commercial transactions
with residents of the United States and ship Counterfeit Products to the United
States.

5)    Each Defendant also accepts payment for its goods in U.S. dollars
through, for example, a variety of payment processors, banks, escrow services,
money transmitters, the Marketplaces themselves, and other companies that
engage in the processing or transfer of money of or on behalf of Defendants by
virtue of their operation of the Seller Aliases on any of the Marketplaces
(collectively referred to hereafter as, "Financial Institutions").

6)    Defendants are subject to the personal jurisdiction of this Court
pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, and exercising
jurisdiction over Defendants is consistent with the United States Constitution and

its laws. Based on the facts set forth above, it is reasonable for Defendants to expect that they may be sued in the United States. *Sec. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1542–47 (11th Cir. 1997) (holding that the court had personal jurisdiction over foreign corporation where the defendant placed ads for securities in two airlines' in-flight magazines, mailed offering materials directly to U.S. investors, and maintained U.S. bank accounts to receive payment from investors.); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–58 (11th Cir. 2013) (affirming jurisdiction over a non-resident who sold counterfeit products through a fully-interactive website).

7)      Plaintiff has never authorized any Defendant to use any of the PLAYSTATION Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of any goods in the United States.

8)      Plaintiff has established that the Counterfeit Products offered for sale by Defendants are not genuine and that each Defendant is using one or more of the PLAYSTATION Trademarks or a colorable imitation of the PLAYSTATION Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of Counterfeit Products.

9)      Plaintiff has established that it is substantially likely to succeed on the merits of its trademark infringement claims:

a)     Plaintiff owns or licenses valid federal trademark registrations for PLAYSTATION Trademarks;

b)     The Counterfeit Products that Defendants are advertising and offering for sale are not genuine;

c)     Defendants are using spurious marks that are identical with, or substantially indistinguishable from, one or more of the PLAYSTATION Trademarks or colorable imitations of the PLAYSTATION Trademarks in commerce on or in connection with the sale, offer for sale, distribution, and advertising of the Counterfeit Products;

d)     Defendants' use of the PLAYSTATION Trademarks or colorable imitations of the PLAYSTATION Trademarks is likely to cause consumer confusion, mistake, or deception as to the source or origin of the Counterfeit Products;

e)     Alternatively and/or additionally, each Defendant is using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of each Defendant with

Plaintiff, or as to the origin, sponsorship, or approval of each Defendant's goods or commercial activities by Plaintiff.

10)    Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm because Plaintiff is seeking a temporary restraining order and has demonstrated a likelihood of success on the merits. As held in the preceding paragraph, Plaintiff has demonstrated a likelihood of success on the merits and is, therefore, automatically entitled to a presumption of irreparable harm, thereby satisfying the second factor of the temporary restraining order analysis.

11)    Even in the absence of the rebuttable presumption, Plaintiff has shown that it is likely to suffer irreparable harm if an injunction does not issue. The proliferation of counterfeit and infringing copies of Plaintiff's goods erodes the distinctiveness of the PLAYSTATION Trademarks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit and infringing goods, the sale of inferior counterfeit or infringing goods by Defendants will have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with the PLAYSTATION Trademarks. This is sufficient to establish a likelihood of irreparable harm. *Noorani Trading Inc. v. Bijani*, Civ. A. No. 1:17-CV-1344-LMM, 2017 WL 8292437, at *9 (N.D. Ga. May 4, 2017). The widespread and unauthorized use of the PLAYSTATION Trademarks

in the marketing, offering for sale, and sale of counterfeit and infringing goods threatens the extensive goodwill associated with Plaintiff's business and the PLAYSTATION Trademarks, and will continue to cannibalize the sale of Plaintiff's genuine goods. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction. *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005); *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, Civ. A. No. 1:17-CV-2789-SCJ, 2017 WL 8942387, at *3 (N.D. Ga. Sept. 27, 2017); *see also Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.").

12)    It is likely that Plaintiff will suffer immediate and irreparable loss, damage, or injury unless Plaintiff's request for *ex parte* relief is granted:

a)    It is likely that Defendants will continue to sell counterfeit and infringing goods through the Seller Aliases on the Marketplaces in the absence of the requested TRO;

b)    As a result, it is likely that consumers will continue to be misled, confused, and disappointed by the quality of these goods, thereby significantly and irreparably damaging Plaintiff's valuable goodwill; and

c)      Plaintiff will continue to suffer lost sales of genuine goods as the result of the lower-cost Counterfeit Products offered for sale by Defendants.

13)      The balance of harms favors Plaintiff. If the TRO is denied, Plaintiff will continue to suffer the above-mentioned irreparable harm to its reputation and the goodwill associated with the PLAYSTATION Trademarks. On the other hand, enjoining Defendants from selling counterfeit and infringing goods poses little to no risk of damaging the goodwill, if any, associated with Defendants. Any harm Defendants may suffer is purely monetary and is therefore compensable, unlike the harm that Plaintiff will continue to suffer.

14)      Plaintiff has further demonstrated that this TRO should be granted *ex parte*. If Plaintiff provides Defendants notice of its application for TRO, Defendants are likely to delete their existing Seller Aliases on the Marketplaces, transfer any ill-gotten gains away from the Marketplaces, hide their identities, cover up evidence of their infringing activities, and shield their ill-gotten assets in a concerted effort to avoid liability and prevent Plaintiff from achieving a meaningful recovery, including financial compensation and permanent injunctive relief. Foreign parties that sell Counterfeit Products online often "disappear" when notified that they are being pursued.

15)    Granting Plaintiff an *ex parte* TRO is also in the public's interest. It will prevent consumer confusion in the marketplace and remove from the stream of commerce Counterfeit Products of unknown and likely inferior quality and composition, thereby preventing consumer harm, confusion, mistake, and deception.

16)    Plaintiff has requested a permanent injunction and recovery of Defendants' ill-gotten profits from their sale of Counterfeit Products pursuant to 15 U.S.C. § 1117(a).

17)    By requesting equitable relief, Plaintiff has invoked this Court's inherent equitable powers to order preliminary relief, including an asset freeze, to assure the availability of permanent relief. *Levi Strauss*, 51 F.3d at 987 (citing *Fed. Trade Comm'n v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

18)    Defendants are likely to destroy evidence of their counterfeiting activities, such as evidence regarding the Seller Aliases and payment processing histories on the Marketplaces and other Financial Institutions, as well as hide or transfer any ill-gotten proceeds from the sale of Counterfeit Products, unless those assets are frozen or otherwise restrained.

## III.    CONCLUSION

In light of the foregoing, Plaintiff's motion [ECF 3] is **GRANTED**, as to its Lanham Act claims only, as follows:

1)    Each Defendant (as reflected on the attached Exhibit A), its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to temporarily:

a)    Cease and refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any Counterfeit Products;

b)    Cease and refrain from manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods bearing the PLAYSTATION Trademarks, or any confusingly similar trademarks, other than genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors; and

c)    Cease and refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating

to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Counterfeit Products;

d)     Cease and refrain from using the PLAYSTATION Trademarks, or any confusingly similar trademarks, on or in connection with any seller alias that any Defendant may own, operate, or control on any Marketplace;

e)     Cease and refrain from any and all use of the PLAYSTATION Trademarks, or any confusingly similar trademarks, as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Seller Aliases registered, owned or operated by any Defendant on any Marketplace; and

f)     Cease and refrain from altering, disabling, closing, or transferring ownership of any seller alias on any Marketplace during the pendency of this Action, or until further Order of the Court.

2)     For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its sale,

offer for sale, distribution, and advertising of Counterfeit Products through its Seller Aliases located on the Marketplaces.

3)      All Financial Institutions that receive actual notice of this Order shall immediately attach and freeze all funds in any accounts owned, controlled, utilized by, or associated with Defendants and otherwise prohibit the transfer of any funds out of any such accounts and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account at the Marketplace or the respective Financial Institution for the trust of the Court, with such frozen funds and holding accounts being held, maintained, or located exclusively within the United States.

4)      Within seven days of receiving actual notice of this Order, all Financial Institutions shall provide a report to Plaintiff for each Defendant having any account with any Financial Institution, the report to include, at a minimum, the following information:

a)      Legal name and email address of each Defendant;

b)      Current account balances and amount of funds attached, frozen, and being held in trust pursuant to this Order;

c)      Identity of all financial accounts linked to or associated with each Defendant's account associated with the Seller Aliases on the Marketplaces, or from or to which funds have been

transferred from the attached accounts, including the name of the Financial Institution, account numbers, routing numbers, and other relevant data to allow Plaintiff to seek further application of this Order.

5)    No funds restrained by this Order shall be transferred or surrendered by any Financial Institution or Marketplace for any purpose (other than pursuant to a chargeback made pursuant to the Financial Institution's or Marketplace's security interest in the funds) without the express authorization of the Court.

6)    Upon receipt of notice of this Order, each Marketplace on which a Defendant maintains a Seller Alias or account is ordered to immediately:

  a)    Provide to Plaintiff the name and email address of each Defendant having an account or store on the Marketplace;

  b)    Freeze all funds held or received by the Marketplace for any Defendant's benefit; and

  c)    Disable each of the Defendant's Seller Aliases on the Marketplaces and any accounts associated with each Defendant and cease providing any services to Defendants.

7)    Plaintiff is authorized to issue expedited written discovery, pursuant to Federal Rules of Civil Procedure 33, 34 and 36, related to:

a)   the identities and locations of Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant, including all known contact information and associated e-mail addresses; and

b)   the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Seller Aliases and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Seller Aliases.

Plaintiff is authorized to issue any such expedited discovery requests by electronic means, including by electronic email. Defendants shall respond to any such discovery requests within three business days of being served by electronic email.

8)   Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

9)   Plaintiff is not currently required to post a bond or other security. *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). However, any Defendant may appear and immediately

challenge this portion of the Order by providing the Court with a reasonable estimation of its potential lost sales, along with supporting documentation sufficient to allow the Court to decide what an appropriate amount of surety would be. Plaintiff will then have one week in which to file a response.

10)     This Order shall remain in effect for fourteen days unless the Court for good cause extends the Order for a period not to exceed fourteen days, in which case the Order shall remain in effect until the date of the hearing or until such further date as set by the Court or stipulated to by the parties.

11)     This Order shall apply to Defendants, their associated Seller Aliases on the Marketplaces, and any other websites, domain names, seller identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale, and selling any Counterfeit Products at issue in this action and/or unfairly competing with Plaintiff.

12)     Any Defendant or Financial Institution account holder may petition the Court to modify the asset restraint set out in this Order.

13)     A hearing is set before this Court on **Tuesday, October 7, 2025, at 4:00 p.m. EDT**. Parties wishing to appear may do so either in person at the Richard B. Russell Building, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, Courtroom 1706; or via ZOOM platform, login credentials as follows: **Join ZoomGov Meeting**

**https://ganduscourts.zoomgov.com/j/1601185134; Meeting ID: 1601185134; Passcode: 390801.** During this hearing, Defendants or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Defendants shall appear and show cause why said preliminary injunction should not issue.

14)    **Service by Alternative Means:** After Plaintiff's counsel has received confirmation that the Financial Institutions have restrained Defendants' funds as directed herein, Plaintiff shall serve copies of the Complaint, Motion for TRO, and this Order on each Defendant by electronic mail using email addresses provided by the Marketplaces, Financial Institutions, or Defendants themselves or by other electronic means reasonably calculated to provide notice to all Defendants.

15)    Any response or opposition to Plaintiff's motion for preliminary injunction must be filed with the Court and served on Plaintiff's counsel two days before the hearing described in Paragraph 13, along with Proof of Service. **Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), and the Court's inherent authority**.

**The Order shall become effective on September 23, 2025, at 4 p.m. EDT.**

This Temporary Restraining Order expires in fourteen days unless extended

for good cause.

**SO ORDERED** this 23rd day of September, 2025.

Steven D. Grimberg
United States District Judge

## EXHIBIT A

| |
|---|
| A1SQ0GU2H9VG4I |
| Adornori |
| ASSHNMOR |
| Axxzz |
| Aychlithic |
| Batant store |
| BIKANZO |
| bluelakestore |
| ChenDeGuo-us |
| chengdubaoyancanyinyouxiangongsi |
| chengyamei |
| Cozybedket Direct |
| DragonDesignGifts |
| Fahrendom |
| FanZhiYue |
| feibingmaoyi |
| Finera Store |
| FORMRS |
| fujianpingtanhuadingxinmaoyiyouxiangongsi |
| fvcffasfaff |
| glodenPlus |
| guangzhoutaomumaoyishanghanggerenduzi |
| HIESGIE |
| hongzhiart print |
| hubeichuanxinkejifuwuyouxiangongsi |
| Jing Chen decorative poster shop |
| Jyun |

| |
|---|
| Koliocaa Store |
| KTSIM |
| Laifzere |
| lanlingxianyuhengtezhongyangzhiyouxiangongsi |
| liangleiamaz |
| LiangShanZhouFuJiaShangMaoYouXianZeRenGongSi |
| lifeiwenhuachuanmeiyouxiangongsi |
| Little_Cloudy |
| liumengdedian |
| LIUUPUP |
| MagicArtwork |
| Martial Erts |
| MIA 06 SHOP |
| nanchonggengyuankejiyouxiangongsi |
| NanNingShiHuiHuaXiaoShouYouXianGongSi |
| ORCAE |
| Peak warehouse |
| Peakmech |
| Pictorio Wall Art |
| PLAO |
| PowerextraMedia |
| qinhong mall |
| QXT-AMZ |
| R HORSE |
| RavenMTBPOD |
| Reabery |
| RIGHTA TECH |
| sheng art store |

| |
|---|
| shenqiuxianyueqiseshangmaoyouxiangongsi |
| SJCustomization |
| SUQC |
| tangyiping123 |
| tianshiguangdianpu |
| tielingshijunxianyuankejiyouxiangongsii |
| Tiling House |
| TOMOPE |
| TZZSIX |
| UUShop |
| winorax |
| WXRR |
| Xancen |
| xiangtingjiafang |
| xianjianpingshangmaobu |
| XiAnQingXiaShangMaoYouXianGongSi |
| XingAn Inc |
| XingTongQiCheXiaoShou |
| XYHTSM |
| yangjiangxiashop |
| YJinYJSTY |
| Yoakiet |
| YOUSHANG ONE |
| YyjFgj |
| Yzrwebo |
| zaaprintblanket |
| ZengQingTao-us |
| ZENXUS |

| |
|---|
| zhoukoushialiushangmaoyouxiangongsi |
| zhoukoushishanzhijiangshanshangmaoyouxiangongsi |
| zhuzhoubaqiushangmaoyouxiangongsi |
| Zikako |
| zouzhi |
| 1616-Sixteen |
| 57 Car Store |
| 63-Store |
| 67-67-67 |
| BBA-001 |
| Cameraphoneshop |
| coolcogo |
| coolgobuy18 |
| diysportshop8 |
| dysony |
| ElectronicsFactoryStore |
| Eshopfine |
| eshopus1 |
| estoau8 |
| Fashion home supply Yongxin |
| fivestar789 |
| FivestarShop789 |
| HAHA-22 |
| Happy Forty-six |
| irisxs_31 |
| ivaluebuy99 |
| jiecana630 |
| jr123476064 |

| |
|---|
| KimboHome-A.C.G.Shop |
| L-ily 99 |
| Loop Mine |
| Mobile camera store |
| shop-pin |
| Smartshopgo |
| Top shop-To-Go |
| topsgeek |
| TopShop668 |
| Topshop789 |
| uk-retailer |
| xiake309 |
| xspar |
| yiwushibowendianzis_0 |
| YOZH80 |
| Ju Zhan Yu |
| LUULOO |
| shaojianghao123 |
| YuanJianJun SHOP |
| Interestin life |
| LJHYGTFF |
| sanhuhai |
| StreetTeeVibe |
| Attycorp |
| BAOFAHU Store |
| Beautiful young soldier |
| bowenkeji |
| DIANKEJI |

| |
|---|
| DodelyGz |
| Famgem |
| Findosom Shop |
| FLF Store |
| GuangZhouHuiJiaShangMao05 |
| Haohushi |
| HeQun |
| hualisheng |
| JinChao Nest |
| jiuyi shop |
| jiuzhiqu |
| JUAN store |
| liqingying |
| liuziming-Inc |
| lizihang |
| LZHDF bedding |
| Noobproof |
| PerftHat |
| PUREYAH |
| qian duoduo168 |
| ROKENDEN |
| SHEN ZHEN SHI XUN QI SHANG MAO YOU XIAN GONG SI |
| shunyiwangluo |
| Taste Trendy Shops |
| VoltVibe |
| WeiChuang |
| wuhanshimenghuochongshangmao |
| wuyangxianyoushangshangmao |

| |
|---|
| xiamenxishuomaoyi |
| xinhuaxianrongyangshang |
| Yang Fei |
| YJHDM bedding |
| YOYUYOHOME |
| YuKeRun |
| zengxiangyun |
| zhangshixiong |